UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SCHUYLER LINE NAVIGATION COMPANY, LLC

                           Petitioner,

            -against-                              20-cv-02772 (LAK)

KPI BRIDGE OIL, INC.

                           Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

> George K. Kontakis
> K&L GATES, LLP
> *Attorney for Petitioner*
>
> George M. Chalos
> Briton P. Sparkman
> Melissa Patzelt-Russo
> CHALOS & CO., P.C.
> *Attorneys for Respondent*

LEWIS A. KAPLAN, *District Judge.*

       This matter concerns an arbitration award entered against ship operator Schuyler Line Navigation Company ("SLNC") in favor of its marine fuel supplier, KPI Bridge Oil. SLNC seeks to take the wind out of KPI's sails by moving to vacate the award. KPI cross-moves to confirm the award and for costs and attorneys' fees incurred in connection with SLNC's motion or, in the alternative, to remand that issue to the arbitration panel.

*Facts*

The arbitration concerned a dispute that ultimately involved SLNC, KPI, and, Dorick Navigation S.A.

*The Underlying Contract and the Commencement of the Arbitrations*

In September 2017, SLNC contracted with Dorick to supply fuel for Dorick's vessel. To satisfy this obligation, SLNC purchased fuel from KPI.  In November 2017, Dorick informed SLNC that the fuel was off specification ("off-spec") and initiated arbitration against SLNC on June 8, 2018.  In accordance with the Society of Maritime Arbitrators, Inc. ("SMA") rules, both parties selected arbitrators.  When it commenced the arbitration on June 8, 2018, Dorick appointed J. Stephen Simms, an attorney specializing in maritime law, as its designated arbitrator. SLNC designated Alan Colletti.

KPI did not become involved with the dispute until June 28, 2018, when SLNC commenced an arbitration against it for indemnity for the alleged off-spec fuel and demanded that the arbitration be consolidated with the Dorick arbitration.  On July 9, 2018, KPI rejected the notice of arbitration, claiming that SLNC's claim against it was time-barred.

*Mr. Simms's Representation of KPI's Affiliates in the Louisiana Action*

By January 2019, the two arbitrations remained entirely separate and inactive.  Mr. Simms then began representing KPI's affiliate in an unrelated case against Murmansk Shipping in the Eastern District of Louisiana ("EDLA").  The record does not suggest that Mr. Simms at that point was aware that SLNC had initiated arbitration against KPI or that  SLNC had demanded that its KPI arbitration be consolidated with the Dorick arbitration.

*The Arbitrations are Consolidated*

Both arbitrations remained idle until March 27, 2019, when SLNC applied to the president of the SMA for a ruling directing KPI to appoint an arbitrator and to participate in a consolidated proceeding.  On April 16, 2019, the president of the SMA issued a Partial Final Award granting this request and consolidating the two arbitrations.  In accordance with the Partial Final Award, KPI designated Louis Sheinbaum as its arbitrator on April 26, 2019.  Both he and Mr. Colletti issued their disclosure statements shortly thereafter.

*Mr. Simms Intervenes in the Louisiana Action on KPI's Behalf*

Mr. Simms continued his representation of KPI's affiliate in the EDLA case during the March to April 2019 period.  On April 2, 2019, Mr. Simms filed a motion to intervene in that action on behalf of KPI and another KPI affiliate.[1]  He subsequently submitted various filings on behalf of KPI and its affiliates, with the last motion (for disbursement of funds) dated June 27, 2019.[2]  The court's final judgment was entered on June 14, 2019.[3]

*The Consolidated Arbitration Begins and Mr. Simms Issues His Disclosure Statement*

Despite the April consolidation, the arbitration remained dormant until July 3, 2019 when Dorick's counsel requested an update from the arbitration panel.  On July 8, 2019, and thus after

---

[1]

*Boland Marine & Industrial, LLC v. JSC Murmansk Shipping Company*, 18-cv-5544 (E.D. La),  DI 181.

[2]

*Id*. at DI 254.

[3]

*Id*. at DI 249.

4

the EDLA case had ended, Mr. Simms issued his disclosure statement.  He disclosed his relationship

with KPI, stating "[s]ince appointment as arbitrator, I have come to represent KPI Bridge in a vessel

attachment proceeding in the US District Court, Eastern District of Louisiana to recover amounts due

for unpaid bunker supply.  This was after my representation of its affiliate (a part of the Bunker One

Group) BMS United, all against Murmansk Shipping.  I have represented other companies in the

Bunker One group from time to time."[4]  The Bunker One Group is a "leading physical suppliers of

marine fuels, lubricants, related products and services for vessels worldwide"[5] and includes KPI

affiliates.

Mr. Simms's disclosure statement revealed also that he was the Legal Working Group

Chair of the International Bunker Industry Association (the "IBIA"), of which KPI is a member, and

that he had no personal or business relationship with the other parties to the arbitration proceeding.

Mr. Simms stated that he did not believe there was any conflict of interest and that he would be able

to render an impartial arbitration decision.

In light of the disclosure about Mr. Simms's prior representation of KPI, SLNC

objected to his participation on the arbitration panel.  In response, Mr. Simms issued a supplemental

disclosure on July 11, 2019, which added that "there is a final judgment in the KPI matter in the

EDLA, and the only remaining matter is funds disbursement. . . . So, there is not a remaining

controversy in the EDLA (on terms and conditions or otherwise)."[6]  Mr. Simms reiterated that he

---

4

        DI 2 Ex. 9.  Unless indicated otherwise, all docket entries refer to *Schuyler Line Navigation Comp., LLC v. KPI Bridge Oil, Inc*. 20-cv-02772 (S.D.N.Y.).

5

        Bunker One,  LinkedIn,  https://www.linkedin.com/company/bunkerone (last visited August 26, 2020).

6

        DI 2 Ex. 12.

5

believed that it was unnecessary for him to withdraw as an arbitrator.  SLNC maintained its objection

to Mr. Simms's continued involvement with the arbitration.  Neither KPI nor Dorick objected, and Mr.

Simms did not recuse himself.

On August 8, 2019, KPI moved to dismiss SLNC's claim against it as time barred

pursuant to terms and conditions that KPI alleged were incorporated by into the parties' contract.

Under a provision of those terms, SLNC had had until May 10, 2018, six months after the fuel's

delivery, to demand arbitration against KPI.  In opposing KPI's motion, SLNC argued that the panel

should authorize limited discovery as to whether KPI and Dorick conspired to prevent SLNC from

bringing its claim earlier.  The alleged conspiracy was premised on the "unexplained" delay between

Dorick's November 2017 discovery that the fuel was off-spec and its initiation of arbitration on June

8, 2018, approximately three weeks after the six-month time bar imposed by the SLNC/KPI contract

had expired.  In support of the alleged conspiracy, SLNC claimed that it could not have had an

indemnity claim against KPI prior to Dorick commencing arbitration.  This argument ultimately was

rejected by the panel.[7]

*The Dorick Payment to Mr. Simms*

Consistent with the SMA rules, on November 26, 2019, Mr. Sheinbaum, KPI's

designated arbitrator, emailed the parties requesting that they each post $12,000 as security for the

panel's fees.[8]  He informed the parties that the panel would allocate responsibility for the payment of

the fees on KPI's motion in the arbitration award itself.

---

[7]
       Arbitration Award [DI 2 Ex. 23] at ECF 9-11.

[8]
       DI 2 Ex. 19.

6

Approximately two weeks later, counsel for the parties confirmed by email that $12,000 was held in their respective clients' trust accounts.[9]  In its email, SLNC's counsel inquired about a payment that Dorick had sent to Mr. Simms's upon his designation as an arbitrator.  Mr. Simms responded that the payment had been applied to his ongoing fees and expenses and that he would "do a reconciliation with the final [arbitration] opinion."[10]  SLNC argues, and KPI does not dispute, that Mr. Simms had not disclosed the Dorick payment to his fellow arbitrators.

*The Arbitration Award*

On January 6, 2020, the three-member arbitration panel granted KPI's motion to dismiss SLNC's claim.  While all three arbitrators signed the award, a footnote revealed that the Mr. Colletti, the SLNC-appointed arbitrator, would have had the panel "reserve its decision on time bar pending limited discovery regarding the communications between Dorick and KPI regarding this dispute."[11]  SLNC argues that the arbitration award cannot stand in light of Mr. Simms's alleged partiality.

*Mr. Simms's Later Representation of KPI*

Approximately three months after the panel issued the arbitration award, the Bunker Holdings Group Claims Department retained Mr. Simms on KPI's behalf for two matters.  According to KPI, these matters "were essentially the same case with parallel litigation initiated in two

---

9

DI 2 Ex. 21 at ECF 2-3.

10

*Id*. at ECF 2.

11

Arbitration Award at ECF 3 n.1.  The parties dispute whether the decision, in light of the footnote, was unanimous.

jurisdictions."[12]

### *Discussion*

"The role of a district court in reviewing an arbitration award is narrowly limited and arbitration panel determinations are generally accorded great deference under the Federal Arbitration Act ["FAA"]."[13]  This deference "facilitate[s] the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation."[14] "Consequently, the burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as there is a barely colorable justification for the outcome reached."[15]

The FAA permits a district court to vacate an arbitration award only in limited circumstances, including "where there was evident partiality or corruption in the arbitrators."[16] Evident partiality may be found "only when a reasonable person, considering all the circumstances, would *have* to conclude that an arbitrator was partial to one side."[17]  Evidence of actual bias is not

---

[12]

DI 15 at 11 n.6.

[13]

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013) (internal quotation marks and citation omitted).

[14]

*ReliaStar Life Ins. Co. of New York v. EMC Nat. Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009).

[15]

*Kolel*, 792 F.3d at 103-104 (internal quotation marks and citation omitted).

[16]

9 U.S.C. § 10(a)(2).

[17]

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (emphasis in original) (internal quotation marks and citation omitted).

8

required, but partiality may not be based on speculation.[18]  Rather, partiality may be inferred "from

objective facts inconsistent with impartiality."[19]

SLNC argues that Mr. Simms's partiality should be inferred from his previous

representation of KPI and its affiliates, alleged hope for future business from KPI, the payment

received directly from Dorick and his failure timely and properly to disclose this payment, the extent

of his relationship with KPI, and other business relationships.  For the reasons set forth below, the

Court disagrees.

*Mr. Simms's Relationship with KPI and its Affiliates*

When Mr. Simms began representing a KPI affiliate in an unrelated matter in the

EDLA case in January 2019, he was not involved in the arbitration against KPI.  There is no evidence

that he was even aware of it.  The Dorick/SLNC arbitration, the only one in which Mr. Simms was

involved, remained entirely separate from the KPI proceeding until April 2019, when the arbitrations

were consolidated.  Accordingly, Mr. Simms's representation of KPI's affiliate during the period

between the commencement and consolidation of the two arbitrations does not suggest evident

partiality.

Upon the April 2019 consolidation, and until the lawsuit's June 2019 conclusion,[20] Mr.

Simms both represented KPI in the EDLA case and anticipated serving as a member of the panel that

---

[18]

    *Id*. (citations omitted).

[19]

    *Id*. (internal quotation marks and citation omitted).

[20]

    *See JSC Murmansk Shipping Company*, 18-cv-5544 (E.D. La), DI 249 (stipulation of final judgment, dated June 14, 2019), DI 254 (motion for disbursement of funds, dated June 27, 2019), DI 256 (order granting the motion for disbursement, dated July 25, 2019).

would resolve SLNC's claims against KPI.  He necessarily was aware of both roles.  If the arbitration had been active during this period, there may have well been a strong suggestion of bias in favor of KPI, and against SLNC.  But the arbitration was essentially inactive.  The only activity during the brief overlap between the consolidation order and the conclusion of the EDLA matter was the issuance of the disclosure statements by the two panel members other than Mr. Simms. No hearings, motions, or discovery were conducted.  By the time KPI filed its August 2019 motion, the first substantive activity in the case, Mr. Simms and KPI's relationship as attorney and client had "materially end[ed]."[21] Accordingly, one "cannot say that a reasonable person would have to conclude that [Mr. Simms] was partial to [KPI in] the arbitration."[22]

Similarly, Mr. Simms's alleged  "ongoing" business relationship with KPI's affiliates through the Bunker Holdings Group does not rise to a finding of evident partiality.  According to SLNC, "[a]lthough the full extent of that relationship remains  undisclosed and unknown, Arbitrator Simms at a minimum has represented two such affiliates[.]."[23]  But *previous* business relationships with KPI's affiliates, and Mr. Simms's involvement with a large, global organization in the shipping industry, of which many companies are members, was not "inconsistent with impartiality."[24]

In addition to Mr. Simms's role as counsel in the EDLA matter,  SLNC takes issue with the substance of his representation there and in earlier matters involving KPI's affiliates.  In the EDLA action, Mr. Simms sought to enforce KPI's terms and conditions, provisions of which were at issue

---

[21]

*Lucent Techs. Inc. v. Tatung Co*., 379 F.3d 24, 31 (2d Cir. 2004).

[22]

*Id*.

[23]

DI 3 at 10.

[24]

*Scandinavian Reinsurance,* 668 F.3d at 72 (internal quotation marks and citation omitted).

in the SLNC, KPI, and Dorick arbitration.  SLNC argues that attorney/client privilege makes it "impossible to know the extent of discussions between KPI and Arbitrator Simms regarding KPI's Terms and Conditions or any other aspect of this Arbitration."[25]  But the fact that Mr. Simms may have discussed KPI's terms and conditions during the EDLA litigation falls short of demonstrating evident partiality or corruption.

SLNC maintains also that the substance of Mr. Simms's 2015 representation of a KPI affiliate is problematic.  He had argued for that affiliate, in a Southern District of Florida case, that an order confirmation had incorporated by reference the standard terms and conditions listed on the affiliate's website.  In the consolidated arbitration, SLNC argued that its contract with KPI did not incorporate by reference the terms and conditions on KPI's website, despite a "note" in KPI's order confirmation that (1) stated that KPI's terms and conditions apply to the contract and (2) included a link that allegedly directed SLNC to the terms on KPI's website.[26]  SLNC contends that Mr. Simms therefore could not have been impartial in the arbitration because he had advocated previously for a position on an issue that was involved in the consolidated arbitration.  It argues also that Mr. Simms would not have been able to rule in its favor without creating a positional conflict.

The Southern District of Florida case was dismissed voluntarily in June 2015,[27] three years before the KPI, SLNC, and Dorick arbitrations were consolidated.  Therefore, by the time Mr. Simms – and two others – were required to decide whether the parities' contract incorporated by reference the terms and conditions on KPI's website, he was not advocating for any particular position

---

25

   DI 16 at 7.

26

   Arbitration Award at ECF 4 & n. 4.

27

   *Dan-Bunkering (Americas) Inc. v. SGR Energy LLC*, 15-cv-21024 (S.D. Fla.), DI 47.

as to that issue.  Nor is it unreasonable to conclude that Mr. Simms could have separated his role as

a neutral decider from his previous role as an advocate and consider the issue impartially.  To be sure,

there are some relationships that are inextricable from the role of arbitrator.  For example, the Second

Circuit has held that a reasonable person would have to conclude that an arbitrator is partial to a party

affiliated with his father.[28]  But unlike a familial relationship, the Court is not "bound by [a] strong

feeling" that attorneys are "more often than not" partial or biased on behalf of their former clients.[29]

In light of this, and mindful of the "high hurdle"[30] that a petitioner must clear to vacate an arbitration

award, the Court holds that SLNC has not met its burden of proof that the content of Mr. Simms's

prior representation gives rise to a finding of evident partiality or corruption.

   Finally, it cannot be said that Mr. Simms was "personally incentivized to rule in favor

of KPI in order to receive future engagements from KPI and its affiliates."[31]  The difficulty with this

position is that vacatur on the ground of evident partiality is not warranted where the alleged basis for

vacatur is "remote, uncertain, or speculative."[32]  Yet SLNC's claim that Mr. Simms was influenced

by a desire to obtain future business from KPI is nothing if not "remote, uncertain, [and] speculative."

It of course is within the realm of conceivable possibility, but it is possible also that there was no such

---

28

  *Morelite Const. Corp. (Div. of Morelite Elec. Serv.) v. New York City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 84 (2d Cir. 1984).

29

  *Id*.

30

  *Scandinavian Reinsurance*, 668 F.3d at 72.

31

  DI 3 at 12-13.

32

  *Kolel,* 729 F.3d 99 at 106 (quoting *Sanford Home for Adults v. Local 6, IFHP*, 665 F. Supp. 312, 320 (S.D.N.Y. 1987)).

desire.  And despite the fact that KPI later retained Mr. Simms for at least two other litigations, any

*direct* connection between the arbitration award and these appointments would be conjecture.[33]


*Mr. Simms's Disclosures (and Lack Thereof)*

SLNC seeks support for its argument that Mr. Simms was partial to KPI by relying on

his belated disclosure and the lack of his transparency as to his prior representations of KPI and its

affiliates, including the "similarity" of the position he had advocated for previously and the dispute

between KPI and SLNC; his relationship to Dorick's counsel; his position with the IBIA Legal

Working Group; and as to the payment he received from Dorick.  Even when considered in

conjunction with Mr. Simms's prior representation of KPI, however, none of these give rise to an

inference of evident partiality sufficient to vacate the arbitration award.


*Mr. Simms's Disclosure Statement*

SLNC contends that Mr. Simms "deliberately avoided" issuing his disclosure statement

until his representation of KPI had concluded.  This is purely speculative.  His behavior may not have

been exemplary, but the time interval does not indicate that he was partial to KPI in the arbitration.

Similarly, while Mr. Simms could have disclosed the substance of his prior representations of KPI and

its affiliates in an effort for greater transparency, it is the "materiality of the undisclosed conflict [that]

---

[33]

        *See Sanford*, 665 F. Supp. at 320 ("[T]he interest or bias [of the arbitrator] . . . must be direct, definite and capable of demonstration[.]").

13

drives a finding of evident partiality, not the failure to disclose or investigate *per se*."[34]  For the reasons

set forth above, the substance of those representations is not grounds to vacate the arbitration award.

SLNC argues also that Mr. Simms improperly omitted, or did not disclose fully, the

payment made to him by Dorick,  details about his position as the IBIA Legal Working Group Chair,

and that he and Dorick's counsel jointly represented a KPI affiliate, four years before the arbitration.

"A party is not entitled to the complete and unexpurgated business biographies of the

arbitrators whom the parties have selected."[35]  The Second Circuit has "repeatedly cautioned that [it

is] not quick to set aside the results of an arbitration because of an arbitrator's alleged failure to

disclose information."[36]  Mere failure to disclose, by itself, is an insufficient ground for vacatur.

Rather, the critical question is whether "*the facts* that were not disclosed suggest a material conflict

of interest."[37]  Therefore, vacatur may be appropriate on the basis of evident partiality when "an

arbitrator fails to disclose a relationship or interest that is *strongly* suggestive of bias in favor of one

of the parties."[38]

Against this standard, partiality will not be inferred from Mr. Simms's failure to

provide the details that SLNC would have preferred to have had included.  First, as explained more

fully below, the present record does not provide information sufficient to conclude that the payment

---

[34]

       *Certain Underwriting Members of Lloyds of London v. Florida, Dep't. of Fin. Servs.*, 892 F.3d 501, 506 (2d Cir. 2018) (citation omitted).

[35]

       *Scandinavian Reinsurance*, 668 F.3d at 77-78 (internal quotation marks and citations omitted).

[36]

       *Id*. at 72.

[37]

       *Id*. at 77 (emphasis in original).

[38]

       *Id*. at 72 (emphasis added).

14

Mr. Simms received from Dorick is strongly suggestive of bias against SLNC.  Without more

information as to the nature of this payment, the Court cannot conclude that Mr. Simms's failure to

mention it in his disclosure statement clears the high bar required for vacatur. Second, his historic

relationship with Dorick's counsel and his position at the IBIA Legal Working Group are simply "too

insubstantial" and removed from the arbitration to demonstrate evident partiality.[39]


*The Dorick Payment*

SLNC speculates as to a connection between the award and Dorick's payment to Mr.

Simms upon his appointment as an arbitrator.  SLNC contends that this payment is relevant to its

present petition because, as an alleged conspirator with KPI to delay SLNC's ability to commence

proceedings against KPI, Dorick was an interested party in the outcome of the SLNC/KPI dispute.

According to SLNC, Mr. Simms was "called upon to rule impartially on allegations of misconduct

between KPI and Dorick [against SLNC]" while "receiving undisclosed payment from Dorick."[40]

Under the SMA rules, "[e]ach Panel member shall determine the amount of his/her

compensation."[41]  The final fee of each arbitrator is fixed in the arbitration award.[42] As explained by

Mr. Sheinbaum in an email to the parities, "it is customary in New York arbitrations in which SMA

Rules are applicable, for Panels to request that the parties post security for the fees of the Panel [to be

---

[39]

    *See, e.g.*, *Lucent Techs.*, 379 F.3d at 28-32 (concluding that there was no evident partiality where an arbitrator did not disclose that he had previously served as an expert for one of the parties to the arbitration and that he and one of his two co-arbitrators had previously co-owned an airplane).

[40]

    DI 16 at 9.

[41]

    SMA Rules (Mar. 14, 2018) § 37.

[42]

    *Id*. § 30.

held in escrow]" and to disburse the fees "as directed by the decisions of the Panel."[43]  The SMA rules

are silent as to what, if any, fees or expenses can be paid to any individual arbitrator directly by the

appointing party.

Against this backdrop, SLNC fairly questions the fee that Dorick paid to Mr. Simms.

This payment was made in addition to the $12,000 that Dorick placed in escrow at the panel's

request.[44]  As SLNC observes, the record is unclear as to the amount or nature of payment made

directly to Mr. Simms, and the arbitration award is silent as to them[45] despite Mr. Simms's

representation that  he would "do a reconciliation with the final [arbitration] opinion."[46]

KPI did not address the payment in its opposition papers, or otherwise challenge

SLNC's version of the facts surrounding the payment.  This perhaps is not surprising, as the payment

was not made by KPI, and it similarly may be uninformed as to the details of Dorick's payment.  By

SLNC's own admission, the circumstances of the payment are not explained by any evidence in this

action.[47]  It is unclear, for example, what obligations Mr. Simms owed – or believe that he owed – to

Dorick by collecting a fee directly from it.  It is unclear also why Mr. Simms did not disclose this

payment to his fellow arbitrators, disclosure that SLNC argues should have occurred.

SLNC contends that these unexplained actions reflect partiality.  While SLNC may be

correct to question these actions, SLNC's argument that the payment gives rise to an evident partiality

---

[43]

DI 2 Ex. 19.

[44]

*See* DI 2 Ex. 21 at ECF 2.

[45]

Arbitration Award at ECF 15-16.

[46]

DI 2 Ex. 21 at ECF 2.

[47]

DI 3 at 16 ("This arrangement raises questions that have simply not been answered.").

finding is based on conjecture and an incomplete record.  Moreover, it is relevant to the present

petition only on SLNC's speculative theory that there was a conspiracy between KPI and Dorick to

delay its ability to commence arbitration against KPI.  The allegation that the Dorick payment

demonstrates Mr. Simms's evident partiality in granting KPI's motion to dismiss is based entirely on

conjecture, and therefore does not meet the "heavy burden" required to vacate an arbitration award.[48]


*Conclusion*

Arbitration serves as important dispute resolution function.  It usually offers a more

confidential forum that is available in a public court.  And while it is not always so, it sometimes can

be swifter and more economical that courtroom litigation.  But those who opt for arbitration,

particularly by utilizing broad arbitration clauses that apply to substantially any and all disputes that

somehow might arise in the future, should be acutely aware that arbitration does not offer all of the

safeguards that are present in formal litigation.  This case highlights one of them.  The standards

governing the recusal of judges are extremely broad[49] while those that apply to disqualification of an

arbitrator – evident partiality or corruption – are much more forgiving.

Petitioner's motion to vacate the arbitration award [DI 1] is denied.  Respondent's

cross-motion [DI 14] is granted to the extent that the award is confirmed.  The matter is remanded to

the arbitration panel on the issue of attorneys' fees and costs incurred as a result of this petition.[50]  The

---

[48]

    *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003).

[49]

    *See, e.g.,* 28 U.S.C. § 455(a).

[50]

    Under the applicable Terms and Conditions, "[a]ny dispute between the parties arising out of or in connection with any Bunker Contract," the type of contract relevant here, shall be resolved by arbitration and the application of SMA rules.  KPI Standard Terms of Conditions (July 1, 2015), https://www.kpibridgeoil.com/wpcontent/uploads/2015/12/KPI-Bridge-Oil-Inc-TCs.pdf. The motion

Clerk shall close this case.

SO ORDERED.

Dated:          September 1, 2020

/s/ Lewis A. Kaplan
_____

Lewis A. Kaplan
United States District Judge

_____

for cost and attorneys' fees constitutes a dispute.